**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **ERIC BUTLER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | |
| ) | **No. 06-2319-KHV** |
| **NATIONAL COLLEGIATE** ) | |
| **ATHLETIC ASSOCIATION and** ) | |
| **THE UNIVERSITY OF KANSAS,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

**MEMORANDUM AND ORDER**

Plaintiff Eric Butler filed this action alleging that defendants violated his rights under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq.*, and 42 U.S.C. § 1983. Specifically, plaintiff complains that the National Collegiate Athletic Association ("NCAA") allows an exception to the five-year eligibility rule for female but not male student-athletes "for reasons of pregnancy." This matter is before the Court on Plaintiff's Motion For A Temporary Restraining Order And A Preliminary Injunction And a Permanent Injunction (Doc. #2) filed July 31, 2006. Plaintiff seeks a temporary restraining order enjoining defendants from enforcing the NCAA's determination not to allow him a sixth year of eligibility. On August 14, 2006, the Court held a hearing at which the parties presented oral argument and submitted evidence. For reasons stated below, the Court now overrules plaintiff's motion for a temporary restraining order.

**Temporary Restraining Order**

The purpose of a temporary restraining order or preliminary injunction is "to preserve the status quo pending the outcome of the case." Tri-State Generation & Transmission Ass'n., Inc. v. Shoshone River Power, Inc., 805 F.2d 351, 355 (10th Cir. 1986). A temporary restraining order is

a drastic and extraordinary remedy, and courts do not grant it as a matter of right.  Paul's Beauty

Coll. v. United States, 885 F. Supp. 1468, 1471 (D. Kan. 1995); 11A Charles Alan Wright, Arthur R.

Miller & Mary Kay Kane, Federal Practice & Procedure § 2948, at 128-29 & nn.3, 6-7 (1995).  To

obtain a temporary restraining order, plaintiff must establish (1) that he has a substantial likelihood

of prevailing on the merits; (2) that he will suffer irreparable injury unless the temporary restraining

order issues; (3) that the threatened injury outweighs whatever damage the proposed restraining

order may cause defendants; and (4) that the temporary restraining order, if issued, will not be

adverse to the public interest.  Tri-State, 805 F.2d at 355.  The Court must deny injunctive relief if

plaintiff fails to establish any requisite element.  Packerware Corp. v. Corning Consumer Prods. Co.,

895 F. Supp. 1438, 1446 (D. Kan. 1995).

## Findings Of Fact And Legal Background

Based on the record evidence, the Court makes the following findings of fact:

The NCAA is a voluntary, nonprofit association which regulates college athletics, defines

eligibility rules for players and imposes sanctions for violations of its rules. The University of Kansas

("KU") is an NCAA member institution and is therefore subject to NCAA rules, which limit a

student-athlete to four seasons of intercollegiate competition within five calendar years.  See Doc.

#16, Ex. 1, NCAA Bylaw, Art. 14.2.1.  The five-year eligibility rule begins to run when a student-

athlete initially registers and attends the first day of classes in a regular term of an academic year for

a minimum full-time program of studies.  See id., Art. 14.2.1.1.  The NCAA may grant a waiver of

the five-year eligibility rule "based upon objective evidence, for reasons that are beyond the control

of the student-athlete or the institution, which deprive the student-athlete of the opportunity to

participate for more than one season in his/her sport within the five-year period."  Id., Art. 30.6.1.

2

In addition, a member school may grant "a one-year extension of the five-year period of eligibility for a female student-athlete for reasons of pregnancy." Id., Art. 14.2.1.3.

In the fall of 2001, plaintiff planned to attend Northwestern Missouri State University ("NMSU") with his girlfriend, Chantel Frazier. Plaintiff planned to try out for the NMSU football team. In February of 2001, Frazier became pregnant. NMSU required students to live in dormitories for their first two semesters and infants were not allowed in dormitories. Plaintiff therefore decided to forego his chance to play football at NMSU. In July of 2001, he enrolled in a full-time course of study at DeVry University in Kansas City, Missouri. Thus, under NCAA rules, plaintiff's five-year period of eligibility began to run at that time. Plaintiff did not attend college in the fall of 2002, but he completed nine semester hours at Avila University in the spring of 2003. Plaintiff attended Avila and played football there during the 2003-04 school year. Plaintiff and Frazier married on March 6, 2004. In the fall of 2004, plaintiff transferred to KU. Plaintiff withdrew from KU during the fall semester, but returned in the spring of 2005 and earned 12 credits. During the spring of 2005, plaintiff tried out for the KU football team and earned a spot as a walk-on. In the fall of 2005, plaintiff was an alternate starter on the defensive line and played in all 12 games.

In January of 2006, KU recognized that plaintiff's five-year eligibility would expire in July of 2006. On behalf of plaintiff, KU requested a waiver of the five-year rule under NCAA Bylaws, Article 30.6.1. On April 12, 2006, the NCAA notified KU that it had denied the request for waiver. On May 11, 2006, KU submitted a request for reconsideration. On June 14, 2006, the NCAA notified KU that it had denied the request for reconsideration. On August 3, 2006, KU appealed the decision denying the waiver. On August 11, 2006, the NCAA notified KU that it had denied the appeal. Under NCAA rules, the denial of the appeal exhausted KU's avenues for appeal or reconsideration.

Therefore, on August 11, 2006, KU notified plaintiff that he was no longer eligible to practice or participate because his five-year eligibility period had expired.[1]

Plaintiff will be a senior at KU during the 2006-07 school year. Plaintiff will receive financial aid of $15,366.00, which is not contingent on his participation in the football program. The cost of attendance at KU for the 2006-07 academic year is $16,238.00. Plaintiff did not receive an athletic scholarship ("athletic grant-in-aid") for 2005-06 or 2006-07.

**Conclusions Of Law**

To obtain a temporary restraining order, plaintiff must establish (1) that he has a substantial likelihood of prevailing on the merits; (2) that he will suffer irreparable injury unless the temporary restraining order issues; (3) that the threatened injury outweighs whatever damage the proposed restraining order may cause defendants; and (4) that the temporary restraining order, if issued, will not be adverse to the public interest. Tri-State, 805 F.2d at 355.

**I.   Substantial Likelihood Of Success On Merits**

To demonstrate a substantial likelihood of success on the merits, plaintiff is required to present "a prima facie case showing a reasonable probability that he will ultimately be entitled to the relief sought." See Autoskill Inc. v. Nat'l Educ. Support Sys., Inc., 994 F.2d 1476, 1487 (10th Cir.), cert. denied, 510 U.S. 916 (1993). Ordinarily, if the other three requirements for a preliminary injunction are satisfied, it is enough if plaintiff raises "questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more

---

[1]   Under NCAA rules a student-athlete may continue to practice, but not compete, for a maximum of thirty consecutive days while a waiver request is pending with the NCAA. Once the NCAA notifies the institution that it has denied the request, the student-athlete must cease all practice activities. See Doc. #16, Ex. 1, Art. 30.6.1.

4

deliberate investigation." Id. Plaintiff has not satisfied this criteria.

Title IX provides in part that "no person in the United States shall, on the basis of sex, be excluded from participation, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). To state a claim under Title IX, plaintiff must show that he was excluded from a program "on the basis of sex." Plaintiff asserts that he missed an opportunity to participate in football in 2001 when Frazier became pregnant and he decided not to attend NMSU in order to work and later care for his daughter. Plaintiff asserts that if he were a female, he would be able to take advantage of the pregnancy exception, under which an institution can grant a one-year extension of the five-year eligibility "for a female student-athlete for reasons of pregnancy." See Ex. 1, NCAA Bylaws, Art. 14.2.1.3. As defendants point out, the pregnancy exception allows a waiver "for reasons of pregnancy," which appear to be different from reasons of maternity or paternity. See Johnson v. Univ. of Ia., 431 F.3d 325, 332 (8th Cir. 2005) (policy affording biological mothers six weeks of paid leave following birth of child, but not allowing such leave to biological fathers, does not violate Title IX). The Court finds no substantial likelihood of success on the merits of plaintiff's Title IX claim.

Plaintiff also claims that the pregnancy exception violates his rights to equal protection. A party seeking to uphold a classification based on gender must show that the classification is substantially related to the achievement of "important government objectives." See Miss. Univ. for Women v. Hogan, 458 U.S. 718, 723-24 (1982). At first blush, the classification which provides an eligibility exception for pregnant female athletes who are unable to attend college and participate in sports appears to be substantially related to important government objectives. See Johnson, 431 F.3d at 332 (policy affording biological mothers six weeks of paid leave following birth of child, but not

5

allowing such leave to biological fathers, does not violate equal protection clause).  Although the

analysis awaits further development by the parties and the Court, at this stage the Court finds that

plaintiff has not established a substantial likelihood of success on the merits.

## II.    Irreparable Injury

Plaintiff asserts that he will suffer irreparable injury if the temporary restraining order is not

granted because he will be unable to complete his education at KU and lose his opportunity to be

scouted and recruited by the National Football League ("NFL").  As noted above, however,

plaintiff's financial aid package for the 2006-07 academic year is not an athletic grant-in-aid.

Therefore, he will not suffer irreparable injury through loss of a scholarship.  As for the loss of an

opportunity for a professional football career, such harm is speculative.  See Colo. Seminary v.

NCAA, 417 F. Supp. 885 (D. Colo. 1976) (interest in future professional careers speculative and not

of constitutional dimension); cf. Bowers v. NCAA, 118 F. Supp.2d 494, 509-510 (D.N.J. 2000)

(damages for loss of potential future athletic career too speculative to support damages claim).

Plaintiff alleges that because he has alleged deprivation of his constitutional rights, no further

showing of irreparable harm is required.  See Adams v. Baker, 919 F. Supp. 1496, 1505 (D. Kan.

1996). Where plaintiff fails to demonstrate a likelihood of success on constitutional claims, however,

he is not entitled to a presumption of irreparable injury.  Schrier v. Univ. of Colo., 427 F.3d 1253,

1266 (10th Cir. 2005).  The Court finds that this factor weighs in favor of defendants.

## III.    Balance Of Hardships

Absent a temporary restraining order, plaintiff will lose the opportunity to play one additional

season before NFL scouts, and may lose his chance to play professional football.  On the other hand,

a temporary restraining order could subject KU to sanctions under the restitution rule if the

temporary restraining order is later vacated or reversed, and it will adversely affect competitive equity on the football field, i.e. the strength of the KU football team relative to other college teams with whom it competes. If plaintiff is ultimately determined to be ineligible, this damage to competitive equity on the football field – which is a primary purpose of the NCAA rule – could not be rectified and would negatively impact hundreds of players at KU and elsewhere. Also, an injunction could require KU to displace another football player to make room for plaintiff on the 105-member roster. The certain harm to defendants outweighs the speculative prospect of harm to plaintiff. Moreover, unlike the adverse affect on competitive equity, any harm to plaintiff can be rectified through money damages if he prevails.

**IV.     Public Interest**

Plaintiff argues that the public interest would be served by enjoining defendants from infringing on his right to equal protection. The low likelihood of success on plaintiff's constitutional claim, however, greatly diminishes any public interest in such an injunction.

Defendants counter that a temporary restraining order would harm the NCAA's ability to enforce its rules and – by allowing KU to have a player who has exceeded his eligibility – also harm the goal of ensuring a level playing field against schools which do not field such athletes. It is in the public interest to allow voluntary athletic associations to determine and enforce their rules without judicial interference. See Shelton v. NCAA, 539 F.2d 1197, 1198 (9th Cir. 1976) (not "judicial business" to tell NCAA how to formulate or enforce rules). This factor weighs in favor of defendants.

**V.      Conclusion**

Based on the foregoing factors, the Court concludes that plaintiff is not entitled to a

temporary restraining order.

 **IT IS THEREFORE ORDERED** that <u>Plaintiff's Motion For A Temporary Restraining</u>

<u>Order And A Preliminary Injunction And a Permanent Injunction</u> (Doc. #2) filed July 31, 2006 be

and hereby is **OVERRULED.  The Court declines to issue a temporary restraining order.**

 Dated this 15th day of August, 2006 at Kansas City, Kansas.

<div style="margin-left:40%">

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge

</div>